## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

    vs.                                    **Case No. 06-40001-01-RDR**

ROBERTO CARLOS LOPEZ-SALAZAR,

        Defendant.

————————————————————

UNITED STATES OF AMERICA,

        Plaintiff,

    vs.                                    **Case No. 05-40160-01-RDR**

JOSUE L. DIARTE,

        Defendant.

————————————————————

### MEMORANDUM AND ORDER

These cases were filed separately, but they involve the same fact situation and they have been consolidated for purposes of hearing the pretrial motions and for trial.  After conducting an evidentiary hearing, the parties were granted time to file post-hearing briefs.  Those briefs have been filed and the court is now prepared to rule.

Defendants are charged with possession with intent to distribute marijuana and possession with intent to distribute cocaine.  This matter arises from a traffic stop on December 21, 2005 at approximately 12:15 a.m.  Defendant Josue Diarte was driving a GMC pick-up truck on Interstate 70 in Shawnee County, Kansas.  There was a passenger in the vehicle, defendant Roberto

Lopez-Salazar.  Defendants were stopped by Highway Patrol Trooper Craig Phillips for the infraction of following too closely.  A search of the vehicle was eventually conducted.  A drug dog named "Torro" played a part in the search.  Cell phones were seized and "searched" as part of the investigation.

Trooper Phillips testified that he has been a Kansas Highway Patrol Trooper for almost six years and a drug interdiction officer for three years.  He has had considerable training in his field of work.  This training includes a 10-week course for certification as a drug dog handler.  He and the dog "Torro" are certified to work as a team in drug interdiction.  They continue to train one day a week.  He has found "Torro" to be very reliable in practice.

On the night in question, Trooper Phillips observed the vehicle in which defendants were riding following a semi-trailer truck going east on Interstate 70.  It looked to Trooper Phillips like defendants were following too closely.  He exited the Interstate highway and immediately reentered the highway and again observed defendants' vehicle.  Trooper Phillips stated that defendants' vehicle was 1½ car lengths behind the truck and moving at 63 mph.  He said he was taught to apply a rule requiring the following vehicle to stay two seconds behind the lead vehicle in these situations.  He did not see any other traffic or notice some other reason which might justify defendants following so close to the truck.  The highway was clear and dry.

2

Trooper Phillips decided to pull over defendants' vehicle, but pulled up next to the vehicle before instigating the traffic stop. As he did so, he could only see the driver in defendants' pick-up truck.  He could not see the passenger and he could not determine whether the driver's race or ethnic origin.  Trooper Phillips eventually stopped defendants' vehicle on the Kansas Turnpike approximately 2.7 miles from where he noticed that defendants were following too close.

After causing defendants to stop their truck, Trooper Phillips retrieved identification documents from each defendant.  In response to questioning inside the patrol car, defendant Diarte stated that defendants were on their way to Pennsylvania from Ontario, California.  Trooper Phillips understood defendant Diarte to say that he was visiting his wife's family in California, but that his wife was not with him because she couldn't ride in a vehicle that long and because it was close to Christmas.  Defendant Diarte said he only knew defendant Salazar as "Chappo" and that Salazar was riding with him to Pennsylvania to look for a job.

Trooper Phillips spoke to defendant Salazar in the pick-up truck.  Salazar said he was traveling from California to Philadelphia to look for a job.  To Phillips, it appeared that defendants were saying that they were strangers to each other. According to his training in drug interdiction this was a suspicious factor, suggesting that one person was overseeing the

3

other on a drug ferrying trip.   Trooper Phillips also considered
Ontario, California to be a source for drugs and felt that the
duration of the trip was so short as to be suspicious.

Trooper Phillips returned the identification documents of both
defendants to defendant Diarte who was sitting in the trooper's car
and also gave Diarte a warning ticket for following too close.   He
told Diarte to "take care" and Diarte exited the trooper's car and
walked toward the pick-up truck.   Diarte was three-fourths of the
way to the truck when Trooper Phillips said, "I have some more
questions, OK?"   Diarte replied, "yes."   Trooper Phillips asked if
defendants had any bombs or drugs in the car.   Diarte answered,
"No" and looked toward the ground.   Then, Trooper Phillips asked if
he could check the car.   Diarte answered, "Si."

Diarte told Trooper Phillips that he had a firearm in the cab
of the truck.   Phillips patted down Diarte and Salazar and had them
wait in front of the truck.   He then secured the firearm in the cab
of the truck and moved on to open the tailgate of the truck.   The
bed of the truck was covered.   When Trooper Phillips opened the
tailgate, he saw a speaker box, a brown container and some bags.
The bags had square items inside them.   Because marijuana is often
transported in squares, Trooper Phillips opened a bag.   He found
marijuana inside.   Then he arrested each defendant.

After arresting and handcuffing defendants, Trooper Phillips
had his drug dog "Torro" sniff defendants' truck for training

4

purposes and for verification of what Phillips had already found.
The dog appeared to alert on the back bumper of the truck.

Defendants' truck was taken to a Highway Patrol facility in
Topeka, Kansas.   Defendants were processed.   The truck was
searched.   The marijuana was processed.   Seven cell phones were
confiscated and processed.   No search warrant was sought to seize
and "search" the cell phones.   One of the cell phones was on
defendant Diarte's person and he had been observed using it while
Trooper Phillips was searching the truck on the highway.   There was
no break in this investigation process from the time of the traffic
stop.

During most of the traffic stop, Trooper Phillips spoke to
defendants in Spanish.   Trooper Phillips learned Spanish from his
grandmother when he was young.   He speaks it well enough to
communicate during traffic stops.   He thought defendants understood
what he was saying in Spanish.   They did not act otherwise.   In
fact, defendant Diarte told him that he spoke "OK Spanish."   When
Phillips asked if he could look for drugs in the truck, he asked
defendant Diarte if he could "checka" the vehicle.   This is Mexican
slang for "check."   Trooper Phillips testified that this was the
term for searching vehicles that he and Spanish-speaking persons
have used during traffic stops.

Two days after the traffic stop, Trooper Phillips returned to
defendants' truck with Torro.   Torro sniffed in the cab of the

5

truck and alerted on a door panel.  Inside, Trooper Phillips found a factory compartment holding kilo-sized bricks of cocaine. Approximately 7 kilos of cocaine were confiscated.  The truck had been stored in a secure lot and no one had access to the truck during the time between the two searches.

The court has reviewed a videotape of the traffic stop which has been submitted into evidence.  As stated previously, much of the conversation is in Spanish and some of it is difficult to hear because of road noise.  The court made no attempt to translate the Spanish heard on the videotape.

MOTION TO SUPPRESS EVIDENCE AND STATEMENTS

Defendants seek to suppress evidence and statements obtained after their vehicle was stopped and searched.

Defendants' first argument for suppression asserts that they were stopped illegally because there was insufficient reason to believe that they had committed a traffic infraction.  The government contends that there was adequate cause to stop defendants for following too closely.

The Kansas statute which is relevant to these facts states:

> The driver of a motor vehicle shall not follow another
> vehicle more closely than is reasonable and prudent,
> having due regard for the speed of such vehicles and the
> traffic upon and the condition of the highway.

K.S.A. 8-1523(a).

As the Tenth Circuit has made clear in U.S. v. Vercher, 358 F.3d 1257, 1261 (10th Cir. 2004), the issue in this kind of motion

to suppress is not whether defendant Diarte was actually guilty of
following too closely, but whether there was an objectively
reasonable suspicion that defendant Diarte was following more
closely than was reasonable and prudent under K.S.A. 8-1523(a).

> Reasonable suspicion requires that an officer provide
> some minimal level of objective justification. However,
> an officer with reasonable suspicion need not rule out
> the possibility of innocent conduct as long as the
> totality of the circumstances suffices to form a
> particularized need and objective basis for a traffic
> stop. Moreover, reasonable suspicion may be supported by
> an objectively reasonable good faith belief even if
> premised on factual error. Finally, reasonable suspicion
> may rely on information less reliable than that required
> to show probable cause and it need not be correct.

Id. (interior citations and quotations omitted).  The court in
Vercher went on to state:

> On a rural interstate in Kansas, an officer's observation
> of the high speed and dangerously close traveling
> distance provides sufficient objective justification to
> suspect that the distance between the vehicles is not
> "reasonable and prudent."  Although [the driver's] added
> explanation of the particular traffic conditions may
> establish that a traffic violation had not in fact
> occurred under Kansas state law, that does not trump the
> relevant standard before us; [the officer's] observations
> need only articulate a basis for a suspicion that a
> traffic violation might have been occurring.

358 F.3d at 1262.

This court and other courts have held that an observation of
a vehicle following approximately two car lengths behind another
vehicle or two seconds or less behind another vehicle at highway
speeds provides a reasonable suspicion that the violation of
following too closely has been committed.  Vercher, 358 F.3d at

7

1261-62 (two car lengths); <u>U.S. v. Chavez-Velenzuela</u>, 268 F.3d 719, 723 (9th Cir. 2000) (two car lengths); <u>U.S. v. Lopez-Guzman</u>, 246 F.Supp.2d 1155, 1158 (D.Kan. 2003) (one car length and less than two seconds); <u>U.S. v. Ordonez</u>, 244 F.Supp.2d 770, 773 (S.D.Tex. 2003) (fewer than two car lengths); <u>U.S. v. Kelly</u>, 46 F.Supp.2d 624, 625-27 (E.D.Tex. 1999) (two to three car lengths); <u>U.S. v. Mercado-Vargas</u>, No. 04-40148-01, 2005 WL 946529 (D.Kan. 2/3/05)(two car lengths).

After careful consideration, we believe the record demonstrates that Trooper Phillips had a reasonable suspicion that defendant Diarte was driving his vehicle in violation of K.S.A. 8-1523(a).

Defendants further assert that defendants' vehicle was stopped because defendants are Hispanic.  No evidence has been presented, however, to support this allegation.  The record establishes that Trooper Phillips could not determine the race or ethnic origin of the defendants at the time he decided to stop their vehicle.

Defendants also contend that they were detained too long for reasons unrelated to the purpose of the stop.  In defendant Diarte's supplemental brief, he states:

> Trooper Phillips questioned Mr. Diarte and the co-defendant about where they had come from, where they were going, the purpose of the trip, and their relationship with each other.  He also ran both defendants through NCIC, which is not normally done during a routine stop.

In <u>U.S. v. Zabalza</u>, 346 F.3d 1255, 1259 (10th Cir. 2003), the

8

Tenth Circuit discussed the general rules that have been applied to detentions during routine traffic stops.

> During a routine traffic stop, the detaining officer may request a driver's license and vehicle registration, run a computer check on the car and driver, and issue a citation. . . . The detaining officer may also question the vehicle's occupants regarding their identities, travel plans and ownership of the vehicle . . . Once an officer has completed a traffic stop, if the driver produces a valid license and proof of right to operate the vehicle, the officer must allow him to continue on his way without delay for further questioning. . . . However, further questioning is permissible in two circumstances. First, the officer may detain the driver for questioning unrelated to the initial traffic stop if he has an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring. Second, further questioning is permissible if the initial detention has become a consensual encounter.

(interior quotations and citations omitted).

We believe Trooper Phillips followed these rules in conducting the traffic stop in this case. The one aspect of defendants' claim in the supplemental brief which is not directly addressed in the Tenth Circuit opinion is the alleged NCIC check of the passenger, defendant Salazar, during the traffic stop. We reject this aspect of defendants' argument for three reasons.

First, courts have found that computer checks of passengers may be done as a part of a traffic stop without having a specific basis for doing so. See U.S. v. Muriel, 418 F.3d 720, 725-26 (7th Cir. 2005); U.S. v. Brigham, 382 F.3d 500, 509 (5th Cir. 2004) (registration and license checks on vehicle occupants are within scope of stop even without information which made police officer

suspicious that vehicle might have been stolen and nervousness of driver); U.S. v. Briseno, 163 Fed.Appx. 658, 2006 WL 122448 (10th Cir. 2006) (traffic stop which included computer check of passenger was not impermissibly extended).   Second, there were suspicious circumstances, such as defendants' lack of acquaintance, which justified additional checking.   Third, we reject defendants' argument because the time which elapsed between the initiation of the stop and the point when defendants were free to go was approximately fifteen minutes.   This relatively brief period of detention was not extended so long as to be unreasonable and unconstitutional.   See Muriel, 418 F.3d at 725 (13-minute detention from stop to consent to search was reasonable).

The last issue which needs to be addressed is whether defendant Diarte consented to the search of the truck.   As mentioned previously, most of the conversation between Trooper Phillips and defendant Diarte was conducted in Spanish, although defendant Diarte also seemed to understand English.   The court has examined the videotape of the traffic stop.   It appears to the court that defendant Diarte consented to answering more questions from Trooper Phillips while he was walking back to his vehicle, after the trooper had returned defendants' documents and a warning ticket to defendant Diarte.   Trooper Phillips asked if Diarte had any drugs in the car and then asked if it was permissible for Trooper Phillips to check the vehicle.   Although it is difficult to

hear on the videotape, we credit Trooper Phillips' testimony that defendant Diarte answered affirmatively.

Trooper Phillips conduct of the search falls within the scope of Diarte's consent.  There was no effort by either defendant to object to or interrupt the search.  There was no coercion, duress or force used to extract the consent to search.  We conclude that defendant Diarte freely consented to the search of the vehicle.

For the above-stated reasons, the court shall deny the motion to suppress evidence and statements.

MOTION TO SUPPRESS EVIDENCE SEIZED FROM CELLULAR PHONES

Defendants seek to suppress evidence obtained from the cellular phones that were seized during the search of defendants and their vehicle.  During the motions hearing, counsel for the government could not say whether the government will use any information taken from the cell phones as evidence in this case.

Upon consideration, the court shall defer ruling upon this motion until we are informed by the government that there is a strong probability that information obtained from the cell phones will be introduced as evidence in this case.

MOTION FOR DRUG DOG DISCOVERY

Defendants have asked for eight categories of information relating to the training and performance of the drug dog in this case.  The government has agreed to provide evidence of any and all training, testing and certification of the dog.  The court does not

believe defendants have established that the additional information they seek is sufficiently material for the court to compel its production.   Therefore, the court shall deny the motion for drug dog discovery to the degree defendants seek more information than the government has already agreed to produce.   See U.S. v. Lambert, 351 F.Supp.2d 1154, 1162 (D.Kan. 2004) (denying discovery of information other than drug dog training records and certifications for the year prior to the search).

DEFENDANT LOPEZ-SALAZAR'S MOTIONS FOR DISCOVERY

These motions have been agreed to by the government and shall be considered moot.

**IT IS SO ORDERED.**

Dated this 13th day of June, 2006 at Topeka, Kansas.


s/Richard D. Rogers
United States District Judge